consolidated for argument purposes. They are 161412 Pace v. Ford Motor, 161647 Pace v. Ford Motor, and 161745 Pace v. Ford Motor Company. Let me just say at the outset that we made a determination early on in this proceeding that there was an overlap between the cases. The most efficient way to proceed would be to consolidate them for purposes of argument. You may or may not disagree, but that's where we are. But it would be helpful, I think, to me and to the rest of the panel, if when you start to raise an issue or discuss an issue, if you could certainly identify what claim we're talking about, what patent we're talking about, and even which appeal we're talking about. That might be helpful in terms of proceeding. Thank you, Your Honor. May it please the court, Ruffin Cordell on behalf of petitioners. We are here on appeal of four decisions from the PTAB with respect to two different patents held by petitioners, the 347 and the 388. And I will try to identify each appeal as I come to them in turn. And for lack of a better structure, I intended to proceed in numerical order. But there are a great number of issues, so let me dive in. I'd like to begin with the 1412 appeal and the construction of set point, which affects all the claims. So the PTAB below said that a set point is simply a predefined torque value that may or not may not be reset. It's our position that that's insufficient, that they have denuded the term set point of any real meaning in the context of these patents. Did you propose an alternative construction? We did, we did. So our proposed construction, it continued, it had the same beginning, but it continued with at which a transition can occur. And the transition is the key to the construction and the meaning of set point. How do you respond to the fact that the specification says there's circumstances where a transition won't occur? That's right, because this method claims the circumstances where the transition does occur. And so in method claims, there are times when the method is satisfied and times when the method is not. The key here is that you have to have an active step. You have to perform the comparison that's recited, comparing road load to set point, and then an action takes place. That is the transition. The example we use is the thermostat. Why do you read in the claim language that's talking about the action taking place into the term set point? Because the term set point is not value. Dr. Severinsky could have simply put value into that claim. He could have put point, he could have put number, but he didn't. He used the term set point, and that set point has to be given a meaning. And the meaning, like in the case of a thermostat, it's not just any arbitrary temperature that we set. It's not just any arbitrary temperature, it's the temperature at which, in an air conditioning system, the compressor comes on. Unless there's hysteresis. There could be hysteresis, and again, if there are other conditions that doesn't defeat the fact that within that time frame, you have to turn on the compressor. It may be defeated for other reasons, and so there may or may not be satisfaction that claim when it comes time for infringement. But the point is, you have to have that structure there. You have to have the comparison that is made, and then the action is that transition, and that's a very important part of this. We know that not only because of the language that the inventor chose, set point as opposed to value, or point, or something else. But we know that because of the specification. The specification gives us a precise definition of set point, and it's an appendix, 103, column 40, lines 46 through 55, where it tells us that the set point referred to in the appended claims is SP, and sometimes here and after as the transition point, i.e. between the modes 1 and 4. And sometimes, and there is a claim differentiation argument, right, that there is a dependent claim. It's back to Judge Stoll's question about hysteresis, and the fact that this condition doesn't necessarily exist every time. And again, there may not be infringement every time, but if there is some time infringement, if the condition is satisfied, and the road load exceeds the set point, the transition occurs, then in fact, that would satisfy the claim. It doesn't have to be every time. We had a case where we actually advocated a construction, saying that it must occur. That is a transition that must occur when the condition is satisfied. From a legal perspective, I don't think that really matters one way or the other, because you can have sometimes infringement. Ford, in his brief, sort of took us to task for that, but I think they got it backward. We were advocating must at that point, and the district court said no, because it doesn't have to. You may have other conditions that intervene. And so as long as the condition is satisfied sometimes, as long as it may occur, as long as you have a system that does that comparison and affects a transition, that's enough. The court looked at the claim language in the wear-in clause, for example, in Claim 1, and said that that claim language itself tells you what the set point is and defines it in terms of torque, right? And that that claim tells you, you know, the action that could occur is actually set forth in the language of the wear-in clause. So that's what I mean by, why do you have to read in that a when the wear-in clause itself says what action is going to occur? That's an excellent point, because Claim 1 is perhaps the most descriptive, if you want to put it that way, of the claims that we're here to talk about. When we look at Claim 23, the transitions are less textual, perhaps. I don't know how to describe that. But they're still there, and so it's important when we're construing the term to preserve that concept, and that's why the district court did it. Because although you're right, in Claim 1, it says when the road load exceeds a set engine, start the engine. I mean, it tells you that you go from mode 1 to mode 4, right then and there. In the context of Claim 23, it says, for example, employing both at least said one electric motor and said engine to propel said vehicle when the torque RL required to do so is more than MTO. And so the district court's feeling, and our feeling, is that in fact, that when we talk about set point, we have to have the transition concept in there. Can I give the court an example of why the board's construction essentially strips all the meaning out of this claim? Imagine we had a system where we had an electric motor, so these are all hybrids, they have an electric motor and they have an engine. Imagine a system where they're both on at all times. As soon as you get in the car, you turn them on, the electric motor is active, the board's construction of Claim 23. Because the electric motor would be on when the road load is below any arbitrary value, and the engine and the electric motor would be on when it's above that value, and then they would both be on when it's above MTO. It strips the claim of any meaning. It's no longer a method of control, it's just an arbitrary set of conditions. And that's not what the claim says. The claim says a method of control with discrete steps that have to be on the claim. They've taken the concept a set point away and what we have now are just a series of values that don't give the claim any meaning. I'm going to ask you to move on now because the clock is running and I think there are questions perhaps by the panel on the Severinsky reference, including on the battery limitations. So I'm going to address that. I will dive right in. So when we go to the factual side of this, the Severinsky reference, what we find is that the board failed to give us the kind of evidence and analysis that it's required to do under Chenery. So it's not enough for them to throw up their hands and cite an expert who says, well that would have been obvious, and then they stop. They need to give us the evidence and the analysis to meet each and every one of those limitations. So let's start with the set point. And what the board points to is a recitation in the Severinsky 970. It's terribly confusing because both our inventor here and our inventor there is both talking about Severinsky. But the 970 reference is relied on primarily in the 1412 appeal. And there they say, well the Severinsky 970 reference tells us that the engine is most efficient between 60 to 90 percent of its MTO. But there's nothing disclosed anywhere that that's ever used to trigger anything. It's not a transition point. There's no comparison that's even made. So one of the things we can talk about the claim construction is the fact that even if we don't go so far as to have the transition requirement in the claim construction, nobody disputes that a comparison must be made. Okay, is it your point that what Severinsky is relying on is speed instead of torque? It is, but my point is just a little bit different here in that there's simply a failure of the board to give us any analysis, any evidence, that this 60 to 90 is used for any purpose. There's no algorithm. There's no comparison. There's no evaluation of it. It simply says aspirationally this is a good place to put the engine. And then what Dr. Severinsky in the 970 patent does tell us very explicitly over and over and over again is the way you do that is with speed. So it turns out that there are lots of different ways you can control a hybrid. You can control it using the pedal position. Many early designs did that. The further you press down the pedal, you went through the electric motor to the engine to both. A straight line progression. Dr. Severinsky when he did the 970 patent thought speed was the right way to do it. Yeah, but we have a board decision and we can characterize it however we want, but they did go through in some detail all of the arguments you made including the fact that you said that Severinsky was expressly just limited to speed. And they cite portions of Severinsky which deal with the torque requirement and they say, which I think is correct, that the two are not mutually exclusive. So why is what they have given us in combination with their reliance on Dr. Davis, the expert on the other side, sufficient to support the substantial evidence standard? Regardless of whether speed is exclusive or not, that isn't my point. The point is they need to give you evidence that torque is being used. That that 60 to 90 range that's set forth in the 970 patent is somehow used to trigger something, compared to something. That is completely absent from this record. And they look at two different things where they attempt to do this. One, the first place is they look at a passage that discusses the use of road load to decide whether or not, and I misspoke there, let me look at that. Is this column 17? Yes, Your Honor, thank you. Column 17, line 9, line 11. And they don't, it's not road load, what they do is they look at this passage that talks about the load imposed by the vehicle's propulsion requirements. And that's examined, but it's examined for one reason and one reason only, and it's to decide whether to charge the battery. And that is undisputed. That is undisputed. And we have paragraph 235 of Dr. Davis's declaration at Appendix 1600, and then our expert at Appendix 27, 36, and 37. It is undisputed that the passage, column 17, that Judge Shaw pointed out, has to do with charging the battery. It has nothing to do with switching modes, certainly nothing to do with starting the engine. And in fact, if you think about it, the engine already has to be on. So what that passage talks about is that the engine is running and is driving the car, and the system says, hey, do I have enough energy left over here to charge the battery? That's all it says. It's not switching modes, it's not going from motor to engine or engine to motor. It is simply asking that fundamental question. The board takes that, courtesy of Dr. Davis's declaration. They say, well, look, there's some recognition that torque could be used. Well, perhaps, but it's a recognition that torque could be used to decide whether or not to charge the battery, not whether to start the engine, not whether to switch modes, not all of the other things that are recited in the claim. And so the intellectual leap that the board asks us to make without any support, save for Dr. Davis saying that it would be obvious, is just that. We are to take a bare mention that output of the engine could be evaluated in terms of load to determine whether or not to charge the battery, and we are to extrapolate that into the entirety of the control system. And that's a leap too far. I want to ask you about Karasini for a and instead it uses pedal position. Correct. What I don't understand as I read your specification, and when you, I understand what road load is according to your specification, but when you're trying to determine, when the patent talks about determining what the road load, it talks about pedal position. So why isn't pedal position, and you know, I think Karasini talks about that input torque, the torque required to propel the car, but where are you coming up with the idea that there's something different in your specification other than pedal position for determining road load? So road load is determined using a variety of factors. Pedal position is one of them. The driver's commands are one of them. There's no question about that, but it's more than that. Imagine you were in a vehicle... Where in the patent is this? The patent actually doesn't tell us how to do that. There's a lot of debate in front of the PTAB about whether we should go ahead and put in what it is that makes up road load, and everybody agreed you don't need to do that, because those of ordinary skill use the term. It's used in vehicle design. It's not an unknown concept. As a practical matter, the way it's calculated in a real vehicle is they use engine maps, and they do lots of driving and real-world testing to determine what road load is, and the road load does have as an input the pedal position, but it can't only be pedal position. Imagine you are pushing the pedal down at 30 degrees, going uphill, into a wind. You'd push the pedal down harder. Yes, well, you would perhaps, but again pedal position is the input that Kerasini uses, and so at 30% going up a hill, the vehicle behaves in a radically different way than going down, and so the pedal position used as a control input, in Dr. Severinsky's view, was completely unacceptable, and we see that over and over and over again in the prior article. Mr. Cordell, let me ask you, getting back to the Severinsky point again that you were touching on earlier, the 347 patent itself does seem to characterize Severinsky's teaching, quoting, when the vehicle operating conditions require torque of an efficient magnitude, the engine is used to propel the vehicle. When less torque is required, an electric motor drives the vehicle, and I'm thinking here in the, this is the 347 patent, A96, column 25, lines 8 through 13, and perhaps similar provisions, which I won't read, at A92, column 18, lines 25 through 30, and A93, column 19, lines 36 through 41, that seems to be a nod to the proposition that torque, that the 347 patent is reading Severinsky as saying torque determines when you go into the engine mode. So, focusing, I'm familiar with the passage of column 25, most likely, there what we have is the later characterization of the patent. In hindsight, and unfortunately, it uses some of the same language that's in the 347 patent. Well, it's the same inventor. Same inventor, and what he's saying... Doesn't that mean something? Well, what he's saying is that it accomplishes some of the goals. It accomplishes using the engine in its efficient region. The question, though, is not whether it accomplishes the goals, the question is how. Does that suggest, though, that there's a recognition that maybe there's some relationship between speed and torque, like you have it columns 13 of the 970 patent? Well, I don't, it doesn't in the way that doesn't suggest that you're using torque as your control input. What it does is that it suggests that the speed system was pretty good. It was pretty good. So, when you use a speed system, it turns out that in normal high-speed operation, that's also a high-torque operation, and in low-speed operation, that's normally a low-torque operation. That is generally true, but Dr. Severinsky discovered that the difference matters. That, in fact, you can gain extra efficiency if you use torque. So, you're saying we shouldn't, for purposes of the analysis, we have to undergo here in the 1215 appeal. We shouldn't really think about these two sections I pointed to. You should. Column 25 in 347. The problem is that the characterization of the prior art in the patent doesn't change what was put out there to the public. So, the public didn't have the later characterization of the 970 patent before the 347 was published. But the PTAP did, right? Well, the PTAP wouldn't either. They couldn't count that as prior art, per se. They can, again... They can't rely on that as substantial evidence at all about the relationship, as Judge Shaw was saying? We actually have a case that I'll pull up and bring that suggests that you aren't supposed to do that. You're not supposed to use a characterization of the prior art as to supplement missing pieces in the prior. Would it make any difference if, that you have here, could this be viewed as some kind of an admission? Because we have the same inventor who's at 347 and the 970. You know, I suppose that he could have been sufficiently explicit to rise to that level, but I don't think that's what we're talking about here. He's simply recognizing that in the 970, in using its speed-based system, achieved some of the same results. And if I could just cough out a couple of quick points here. I wanted to address the other one I thought was a significant factual problem with what the board did. The board looked at the 60 to 90% passage in the 970 patent and they said, aha, that shows road load. They said that is road load. They confused the output of the engine with road load. And it's a profoundly wrong thing to do. And it's really a damning aspect of the board's decision. The question here is not what the output of the engine is. The question is, what do we do to turn the engine on in the first place? You can't use the output of the engine to decide when to turn the engine on because it would never come on. It's a it's a nonsensical circular argument. If you're if you're looking to see when the output of the engine exceeds a set point to decide whether to turn it on, it'll never turn on because it starts out by definition at zero. The board made a fundamental fact error and that's admitted by Dr. Davis at appendix 2812. Can you move on to the battery limitation? I know the clock is running. I can't. I don't know how much consequence this has in the scheme of things. But on claim 23, the board seemed, one of the things that troubles me is that the board seemed to be focused entirely, and that may have been because those were the arguments you were making, on the latter part of the phrase, when the state of charge indicates a desirability of doing so. And they said, reads on Severinsky, Severinsky talks about when the battery needs to be charged, at least on some occasions, at 10 to 20 percent. Now you seem to be making an argument beyond that in your briefs, which deals with the former portion. It's like a two-part limitation in the claim, right? So you seem to be arguing the earlier part, using the torque between RL and SP. Right, so what that claim is talking about is that in normal operation, the battery is fully charged, you're driving along, and when when the road exceeds the set point, we got to turn the engine. There's an exception set forthright in the claim that says, if the battery is low, you may need to lower the set point, basically. You need to start the engine at a lower set point, because we also need to charge. I think what Judge Prost is asking, the claim talks about the difference, using the difference between set point and road load to charge the battery. It's how it's charging the battery. Did you argue that and rely on that limitation below? I think that's what she's asking. So how it's charging the battery, I didn't think was in great dispute. So is this, I do read this phrase, using the torque between the RL and SP to drive set. Do you see that as a temporal limitation? Is this like when you charge the battery, when this happens? It requires that, in fact, you activate the engine below a set point and use that torque at that time to charge the battery. It says, using the torque between RL and SP to drive, set at least one electric motor to charge said battery. You're saying that's not disputed? Well, I mean, it depends on what issue. I mean, it is, it's certainly part of the claims, it's certainly something we don't think that the board proved. But why was the board wrong? My understanding of the board is they looked at the latter portion of the limitation. It says, when the state of charge indicates a desirability of doing so. And they referenced the fact that in the 970 patent, they talk about when the battery is slow or reaches 10 to 20 percent, that's when you do the charging. The problem is they don't evaluate the first part of that as a precedent, if I can call it that. They don't evaluate turning on the engine in the first instance with relationship to a set point. So it is true that in the 970 patent, we have the excess energy from the engine to charge the battery. That I don't think is in dispute. What I think is in dispute is the fact that the board doesn't tell us that you ever evaluate the road load to activate the engine in the first instance, much less activate it at a lower level if the battery is in need of charging. I do know that the other side, maybe this is what you're referring to, the other side references a provision in 970 that I don't think the board looked at. But again, it could be because you weren't really making this precise argument. But they do talk about the portion in column 10 of 970 that talks precisely about when the vehicle starts down the hill, the operator lifts his foot from the accelerator, kinetic energy of the vehicle and the engine's excess torque may be used to drive the motor as a generator so as to charge the batteries. That seems to be very close to what you're talking about. Well, that part is not in dispute. So using excess energy to charge the battery is the way all hybrids work. So that has never been a bone of contention. What is a bone of contention is turning that engine on as a result of road load and then turning it on at a lower level if the battery is in need of charging. If you're coasting down the hill, then the torque required to propel the motor must be lower than a set point, right? It is. When you're going down a hill and then you turn on, use the energy from the gas motor to send it to the battery, why doesn't that meet the limitation? That may well meet the limitation, but the gas motor would have had to have been on in the first instance. So what that section of Claim 23 talks about is using the gas engine when those two conditions are satisfied. Either you're above set point or you're above set point plus the amount of torque required to charge the battery. And I apologize about the complexity, but it is a complex field. Do you think it's conventional, the part in the claim that talks about when you take, if the motor's on, and the amount, the excess amount of energy, which is defined in the claim as SP minus RL? Do you think that part is conventional? No, because SP is not conventional. Okay. So it is conventional to use excess torque from the engine or energy, usually it's talked about in terms of power. It's conventional to use excess power to charge the battery because it's free. It's essentially out there and in. You have systems like the Asani prior art, where the engine is always running at a high constant power. That's what it does. And so what they do is they derive energy from it if it's not needed, if that power is not needed to drive the car, and then they contribute power back if it is needed to drive the car. It's called a peaking approach. It's a completely different architecture, but that's what they do. Let me turn you to, I think it's the 647, the 388 patent. I just had one question on the 388 patent, and that goes to claim three. Yes. Because I think the argument there, at least what I boiled it down to, is that the board didn't give us any analysis. That's right. But when you look back at the record in the citations, and you even refer to some of this in the for us to, given the board's conclusion, to go back to the citations to the record that you have, and that your friend has, and to reach that conclusion, the conclusion of whether substantial evidence supports the board's conclusion. I think it's an abstraction issue. I think if there were very close calls, if you had a claim that was very similar to three others that had been fully analyzed, you might be able to do it. But Chenery tells us, no, that the board as an administrative agency must give us the evidence and reasoning it used. And the two cases that they cite, NTP and N. Ray Hyatt, had a completely different sort of field than what we have here. The claim three talks about adjusting a threshold that's used as part of this limiting the rate of change of the engine in relationship to the battery charging issue. It's a very complex but very specific issue, and the board just just missed it. And so I plan to stand here and beg for at least an action on that point alone. Okay, you're well interviewed, but I will reserve the time you had. I guess you've got about five minutes left. Thank you. Good morning, Your Honors. May it please the Court. This case is about Wait a minute. It is, if we get by the claim construction issues that your friend has raised. So on set point at least, right? The claim construction issues in the two primary ones, if you rolled out in set point, really have no bearing on this case. First, let's take set point. With regard to set point, they have never explained in their brief why the set point construction really matters. Because all they're trying to add to it is a transition. But all the transition occurs at the set point. So even if the construction was right as they proposed, the prior art shows it. You've got the 970 patent, Severinsky. It shows I'm going to run the motor up until 60% of maximum torque output. Then I'm going to run the engine. A transition occurs at the lower set point, 60%. You've got the Bumby reference. The Bumby reference shows in figure 8 that I'm going to run the motor until I hit the lower torque bound. And once I hit that lower torque bound, the lower torque set point, I'm going to transition and the engine's going to operate. You've got Carasini. Carasini shows in figure 9 that if that torque is a low requirement, I'm going to use the motor. Once that torque requirement from the pedal position starts going up, and once I hit a set point, then I'm going to transition until the motor. So the idea of set point doesn't distinguish any of the pieces of prior art because they all clearly show a transition. Also, in any event, the board's construction at set point is correct, clearly under the broadest reasonable construction. We heard some dispute in my friend's argument regarding value versus point, but they've never disputed that part of the construction before. The plain meaning of set point is just a value that's been predetermined. That's what the board found, and that part of the construction has never been contested. It's a torque value, right? A torque value, yes. And that was, they originally disputed that when they were through their dispute, but he just said that there was a distinction between a set point wasn't just a value, but the board construed set point to be a predetermined value, and that part of the construction, a predetermined torque value. The idea that's a value has never been disputed, and a set point can be a reference point, it can be an operational point, or it can be a transition point. And both the claims and the specification of the 347 patent are clear on that, but the plain meaning of set point clearly doesn't require a transition. Then let's look at the claim language. The claim language here, just like the spec, clearly has cases like claim 1 and claim 23, where the set point doesn't require a transition. It doesn't say anything about a transition. In fact, it uses the term in a range context. And then you've got other claims, like claims 3, 4, 27, I think it is, that clearly specify a set point causing a transition. So when the claim director wanted a transition to occur, they expressly put it in the claim. When they didn't want a transition to occur, they didn't put it in the claim. You also look at how set point is used in the claims. It's used to denote the ends of ranges, not points at which things happen. The first element of claim 23 is employing the motor when the road load is less than a set point. So anytime in the range less than set point, you employ the motor, you satisfy that range limitation. The second element is employing the engine in between the road load and the maximum torque output. It doesn't say the engine at the lower set point. It says employing the engine in between the lower set point and the maximum torque output. So it's anywhere in the range that would satisfy that limitation. It doesn't require a transition like the other claims that add the transition requirement. Can I ask you about Severinsky? Yes. How do you respond to Mr. Kurdel's point about how this about the combustion engine is run only in the near vicinity of its most efficient operational point, the 60 to 90 percent sentence. How does that show the torque is actually being used to control when the engine is turned on and off? Why isn't that just a byproduct of using speed, for example? Because it says the internal combustion engine is run only in the near vicinity of its most efficient operating point. And then it states the most efficient operating point is the 60 percent to 90 percent of the maximum torque output. So it's telling you I don't run my engine until I don't start my engine, until I hit that 60 percent of what maximum torque, not speed. And it's amazing when you compare the consistencies between the claims that the 970 patent, when it defines the which I'm going to operate the engine, uses it in terms of maximum torque output exactly like the 347 patent. They both use the exact same language to denote that range. So you agree. Do you think that the 970 also teaches a separate control that would be the speed? Or do you think that the speed and the torque are one in the same? No, it teaches both. You can use a torque based set point and you can use speed under certain conditions. And it makes sense. Another way that the Severinsky patent shows torque is it talks about the hill climbing mode. In the hill climbing mode, if I press my pedal 30 percent of the way and I'm going 30 miles an hour on a flat surface, but I come to a hill, anybody who's driven a car knows the car is going to slow down if I keep the pedal pressed the same, because I need more torque to maintain that speed up the hill. So what do drivers do? They push the pedal down more to get more torque from the engine to maintain that 30 miles an hour going up the hill. In that situation, I can't use speed because my speed hasn't changed. But I need more torque from my engine and that may cause me to switch from my motor operation to my engine operation. So I have to use torque. What did the PTAB rely on besides this 60 to 90 percent language to find that there was a disclosure of using torque or road load in order to determine which engine to run? The board relied on column 20, lines 63 through 67, which we've talked about. Column 7, lines 11 through 15, which also shows the starting characteristic because it shows the internal combustion engine is operated only under the most efficient conditions. Most efficient conditions being 60 to 90 percent of maximum torque output. Then it says when the engine can be used efficiently, that's in that range, the engine is employed. Talks about using that same efficient range to determine when the engine is employed. It also relied on the admissions from the 347 patent that Judge Schall referred to on column 25, lines 4 through 16 of the 347 patent, where the 970 patent, Dr. Severinsky, who's the inventor in both the 347 patented issue and the 970 patent. So when he was talking about the 970 patent, he knew what it was talking about. It wasn't just any patentee talking about a random piece of prior art. He was talking about his own patent. He knew how it worked and he described in that passage that the 970 patent operates, quote, the internal combustion engine only at the relatively high torque output levels. Exactly what we're saying, that 60 to 90 percent. He goes on to say when the vehicle operating conditions require torque of this approximate magnitude, the engine is used to propel the vehicle. He goes further to say when there is less torque required, the motor drives the vehicle. So he's clearly showing that it's torque based, not speed based, and he's clearly showing that the torque is used to start the engine. And this is binding admissions. When a patentee talks about the prior art and makes admissions about it, it's a binding admission. Do you know, Mr. Cordell referred to a case, but I don't think he gave us the name, that there is a case in which we have, I guess, suggested that such reliance is inappropriate under certain circumstances. Do you know what he's referring to? Yes, there's two cases. First, there's the case that it's binding is our case, Pharma-Stem Therapeutics versus Viacel, and that's at 941 Fed Third, 1342 pinpoint site, 1362 Federal Circuit 207. Then when a patentee makes submissions about the prior art, it's binding. The case that my friend relied on... I'm sorry, what was the 1342, pinpoint site, 1362. I'm not sure we're up to 941 Fed Third yet. Maybe I'm wrong. I will check that if my notes are correct. I assume you said... 491. Excuse me. 491. Thank you very much for that correction. Maybe in a couple of years we'll be good. We're not as productive as you thought we were. My typing is a little sloppy. The case that they relied on was Clearwater Systems versus Avapo. What's the site for that? That one is 394 Fed Appendix 699, 705 Fed Circuit 2010. So that's a non-PREC, it sounds like. Well, it's also completely distinguishable. In that case, you had a situation where there was a prior art apparatus patent, and then the patented issue was a method patent. And in the method patent, they described the prior art patent. And the district court did an inherent anticipation analysis. It found inherent anticipation of the method claims of the patented issue based on the apparatus claims, not by reading the claims of the patent on the patent's own description of the prior art and finding it inherent. And so the court reversed and sent it back because they found that an improper anticipation analysis, because in anticipation analysis you're supposed to compare the claims at issue to the prior art, not to the patent's description of the prior art. I'm sorry, I have two questions. One relating to this uninitiated, namely me. How, again, does speed translate to torque value? Power equals torque times speed. That's the basic equation. And when somebody of ordinary skill in the art is talking about a gas pedal, they're asking for power or torque. They're referred to as kind of twin sisters. They're very similar, but there are differences between the two. And so power equals torque times speed, and you can work that equation to be related to power or torque. My second question is this. Assume for the moment that one word to accept your argument that the Bumby references render unpatentable claims 21 and 23, okay? Okay. I like that argument. That, well, I understand. I would think so. How then does the Bumby renders 23 unpatentable, what is Severinsky still pertinent for? And tell me if I'm missing something. I believe there is an issue with Bumby also, Bumby reaches claims 37, but the Severinsky prior art resigned claim 36, but I'd have to check that. I thought that maybe Severinsky dealt with 1, 9, and 23. I don't know if that's right, but that's what I have marked. It does, yeah. So you're saying Bumby reads on, I have it marked 1 and 23, so I think 9 is missing. Okay, so Severinsky is pertinent to 9. If you are correct on Bumby, they're still pertinent for 9. Yes. Okay. In Severinsky, you know, one of the issues that came up with Severinsky is the battery charging limitations. Right. Here, Severinsky clearly shows the battery charging limitation. The court referred to one example, which was the coasting. There's three examples where, first of all, we think the timing consideration on the limitation in claim 23, when it says employing the engine to propel the vehicle when road load is less than a set point and using the difference between road load and set point to charge the battery, the only timing limitation that the board found that we think exists is when it's desirable to do so. And that makes sense because your whole idea of these systems is to use the motor to supplement the battery. So I want to use the motor to supplement the battery at low road load requirements and at very high road load requirements. And so if my battery isn't charged, I can't use the motor to achieve the efficient operating modes of the engine. So I always want to use the engine to charge the battery whenever the battery is low. And it shows that because... Well, except isn't the claim language more limited, which says using the torque between RL and SP to drive at least one electric motor charge when... So isn't that more limiting? No. Because all it's saying is you're going to do it when it's desirable to do so. You can't take the employing the engine when road load is less than a set point and separate it from the using the road load between the set point... Between the road load and the set point separately because else you're reading the first part of the limitation inconsistently with the earlier limitation to claim. The earlier limitation to claim says employing the motor when road load is less than a set point. That's the basic operations of the engine. When you're using a low road load, you use the motor. This is an exceptional circumstances, so you've got to read the whole clause together. And here it's talking about you're employing the engine when road load is less than a set point, which is contrary to the earlier limitation we talked about. So you've got to read it with the next step that requires and using the engine, the road load between road load and set point to charge the battery when... When does this exception occur? When it's desirable to do so. Yeah, but how do you know that it's the amount of torque or amount of power that's being applied is equivalent to the road load, I mean the set point minus the road load? Because the claim teaches, as we talked about with Severinsky, it talks about a heavy traffic mode where you have light charges, that's road load, that's the set point. It talks about coasting, that's road load, that's the set point charging the engine. It talks about going downhill, that's road load, that's the set point. So it clearly charges the engine when road load is less than a set point. The magnitude... The amount is the amount, that's I'm asking about, the magnitude. Getting there, Your Honor. So we know it charges road load less than set point. But then we also know that Severinsky patent repeatedly talks about when you operate this engine, only run this engine between 60 percent and 90 percent of maximum torque. Column 20 said that. Column 7 said that. The 347 admission said that. They only want to run the engine when it's efficient. So what you do is when you couple those two teachings together, that I'm going to charge the engine when road load is less than set point. And when I run the engine, I'm going to run it efficiently in 60 to 90 percent of maximum torque output. That I'm going to use the road load in between road load and set point to charge the engine. Where did the PTAB say that? Because I think they may have just missed this one limitation on magnitude. Well, the PTAB's opinion on this is page A21 through 22 of the Appendix. You've also got the board talking about this road load less than a set point on A21 and 22. It's also in the 1415 opinion of page A54. But there's also extensive expert testimony on this. And the expert testimony is if you're looking at the 1412 and 1415 Appendix, that's at A1623 through 1625, A1664 through 66, A7604 through 7611, A7380 through 81, A5846 through 51, and A5779 through 85. So there is clearly substantial evidence supporting the board's conclusion. But the board didn't rely on that. I mean, the board's analysis is quite brief. It I'd have to go back and check. Okay, I'm looking at 21 through 22. I mean, they do have some broad statements. It's a little less than clear, perhaps. They seem to just rely on the passage from Severinsky at column 18. And I believe that's expressly from the, when you know you're going to charge the battery at road load less than set point, and you know you're going to do it efficiently, because earlier in the board's opinion, they do refer to you're only going to run the engine from 60 to 90 percent of maximum torque. You're simply coupling those two statements together. Can I move you on to the final point I raised with your friend, which is Claim 3 and the 388 patent? Yes. Why isn't it really the most appropriate course for us to take, given the absence of any kind of analysis by the board, to remand it? Even if we were to agree or you may have the better argument, why isn't it really our job to send it back to the board so they can do analysis when the analysis was completely the conclusion with respect to Claim 3 of the 388? It's a conclusion, but it's a conclusion that's clearly not a typo. They repeatedly treat Claim 3 in the context of 1 and 19, and they repeatedly refer to it as being invalid. So in the context of finding it invalid, there are inherently obviousness, there are inherently factual issues that were found to support that. You're correct, there is not any analysis. We don't know what facts they relied on to support that conclusion, so how can we possibly evaluate their analysis to conclude whether or not there was substantial evidence? They said nothing. That's up to the court's discretion other than substantial evidence, which is up there in the record, and I can cite to it if the court wants. Okay. Any further questions? I don't think we're set. It's the court. To respond to Judge Schall's question, yes, it was the Clearwater case, and the reason why I think that we need to look at this very carefully is that the PTAB didn't rely on any of the statements in the 347 about the 970 in support of its obviousness case. So that's why the Clearwater case, or the case that counsel just cited, aren't cited anywhere in the PTAB's opinion because they did not place any emphasis at all, no weight at all, on the characterization of the 970 patent by the 347. So you're saying we should not place any weight on it either? Correct. And again, under Chenery, they should have done that if in fact it formed a part of their analysis. But to the point on the merits, what Clearwater cautions is that it's not the later characterization of the prior art that counts. If Dr. Severinsky had written something that was factual, if he said back in 1998 people understood the following things were true, that might be a different matter. But that's not what we're talking about here. We're talking about his later characterization in the context of writing the 347 patent, and he recognizes that some of the concepts from the 970, and what Clearwater says is that you aren't supposed to use those. Now let me jump into some of the issues that my colleague raised. So, and just for the record, that's in footnote seven of our reply brief. We note that the PTAB did not deal with the entire Clearwater analysis and didn't rely on it. We talk about a transition point and my colleague said, well, we see the transition point over and over again. We see it in the 60 to 90 percent. We see it in Bumby that there's a lower bound. We see it in Karasini because there's a figure there. But look at that very carefully. There is no analysis in any of these prior art references that say that you look at the torque and that you do something. It doesn't, there is no comparison at all. What we have in the 970 is the 60 to 90 range, but it simply tells us that that's aspirational. Sixty percent of the total torque output of the engine is a hugely high number. If you look at the 347 patent, it talks about much lower thresholds to be used to turn on the engine. There is no suggestion anywhere that you would run an engine at that level. And to the point, the claim tells us the engine runs between set point and the maximum torque output, not 60 to 90 percent. The claim, this claim, claim 23, says we run between the set point and 100 percent of the capacity of the engine. So it simply doesn't fit here. It was an aspirational statement in the 970. There is none of the support that you would need. There is no algorithm. There is no if-then-else statement. There is nothing to tell one of ordinary skill that you Well, I'm starting with the 970, but I'll say that for Bumby next. What about the disclosure, it's on page A5639 of the appendix, where they actually use the words road load and there's a section of the Bumby article that's referring to optimum control of the hybrid electric drivetrain. Well, I would say two things. I would say first that what it's talking about there is pedal position. Remember what Bumby is talking about when it talks about the quote road load is in fact pedal position. But more than that, what Bumby is doing there, remember there are two different embodiments in Bumby and we take the position of the Boston scientific case. The board at very least should have explained how it is they were mixing those two embodiments, the theoretical and the practical embodiments I'll call them. When Bumby himself or his students tell us you can't mix those two, that's why they had to go to the suboptimal approach because they couldn't do it. But putting that aside, what Bumby is doing there is deciding which gears to choose in order to stay within a certain torque and speed box that's defined in the figures. And your honor asked counsel about the relationship between torque and speed and it's a little bit like current and voltage. So you have current and you have voltage and electronic circuit and then you have power, which is the combination of the two, but they are profoundly different concepts. And we know that because the experts agree that they are profoundly different concepts. What about, I think the response was Mr. Moore said that he wasn't relying on saying speed is the same as torque. He was saying there was two different control inputs in Severinsky. Well that may be, but we have seen no place in Severinsky where that torque input is being used. We see speed, we see speed explicitly. We have his 60 to 90 passage that says that the engine is used in that range, but your honor that is an engine sizing discussion. The question is how big an engine should you pick so that our speed based algorithm will put you in that range. That's what that discussion is all about. It has nothing to do with turning the engine on. It has everything to do with picking the sizing of the unit. If I could just say one last thing, it would be this. That the battery charging limitations we've spent some time talking about don't just depend on the notion that you're going to do it efficiently. We have to look at what the prior art tells us. What the prior art tells us, so if we look at 821, the board's opinion that my colleague referred to, it tells, it cites the passage in Severinsky at column 18.9 through 22 that says you do this every so often, perhaps one once per hour for a period of approximately 12 minutes. So none of the set point analysis, none of the difference analysis is obtained. Instead, it's a time-based system. We have the same thing in Bumby. In Bumby it talks about a time-based system and we see that in appendix 7053, which is the Mazding thesis that sort of talks about all of them, but it makes it very clear that we're talking about a time-based system. Thank you. Our time has expired. We thank both sides and the cases are submitted and that concludes the proceedings for this morning.